IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

JEFFREY HUFFMAN, et al.

:

v.                          : Civil Action No. DKC 2004-2833

:

TOWN OF LA PLATA, et al.

:

## MEMORANDUM OPINION

Presently pending and ready for resolution in this case raising constitutional challenges to Defendant Town of La Plata's policy regarding health insurance benefits for its employees is a motion by Defendants La Plata and William F. Eckman, Mayor of La Plata, (together, "La Plata"), to dismiss Plaintiffs' amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  The issues have been fully briefed and the court now rules, no hearing being deemed necessary.  Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

## I.  Background

The following facts have been alleged by Plaintiffs. Plaintiffs are employees of Defendant Town of La Plata.  Until 1996, Plaintiffs were extended coverage under the health insurance benefit plan offered by La Plata to all of its employees ("La Plata's plan").  However, in 1996, La Plata

encouraged Plaintiffs, all of whom were receiving health insurance benefits from other sources in addition to La Plata, to drop their participation in La Plata's plan in exchange for additional contributions to each employee's 401(k) savings plan. In essence, Plaintiffs were given the option either to remain covered under La Plata's plan (and, thus, remain covered under two plans), or waive La Plata's coverage and receive additional contributions from La Plata to their 401(k) plans.[1] Despite the superior coverage La Plata's plan offered *vis-a-vis* Plaintiffs' other plans, Plaintiffs opted out of La Plata's plan.  Between 1996 and 2002, La Plata regularly made additional contributions to Plaintiffs' respective 401(k) plans.

Beginning in October 2002, however, La Plata changed its health insurance policy and informed Plaintiffs "that only those employees having no other public or private insurance [were] eligible for coverage from [La Plata.]  *See* Paper 4, ¶ 12.  As a result, La Plata discontinued the practice of making additional contributions to Plaintiffs' 401(k) plans.

---

[1] Plaintiffs allege that the payment represented the "differential reflecting the cost to the Town of providing such coverage to its covered employees."  *See* Paper 4, ¶ 13. Although not entirely clear, presumably, this means the difference between what it would cost La Plata to cover all of its employees and what it would cost to cover only those without other sources of health insurance.

2

In April 2004, Plaintiffs filed suit against La Plata and William F. Eckman, La Plata's Mayor, in the Circuit Court for Charles County.  Plaintiffs assert that La Plata's unilateral change in its health insurance policy violates their constitutional rights under the Equal Protection and Due Process clauses of the Fourteenth Amendment.  On July 14, 2004, before service had been effected, Plaintiffs filed an amended complaint, asserting an additional claim of promissory estoppel. La Plata was served with the amended complaint on August 2, 2004, and, pursuant to 28 U.S.C. §§ 1441 and 1446, timely filed a notice of removal in this court on the basis of federal question jurisdiction.  On September 7, 2004, La Plata filed the present motion to dismiss, arguing that Plaintiffs have failed to state equal protection, due process, and promissory estoppel claims.  For the following reasons, the motion will be granted.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957).   Except  in  certain  specified  cases,  a  plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.   *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).   The court must disregard the contrary allegations of the opposing party.   *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).   The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**III. Analysis**

4

## A.    Plaintiffs' Equal Protection Claim

The gravamen of Plaintiffs' federal equal protection claim is that La Plata's policy has created two classifications of employees for purposes of deciding who is eligible for coverage under La Plata's plan:  (1) those who are covered under another public or private health insurance plan; and (2) those who are not covered under another plan.  Plaintiffs assert that by denying coverage to the former group, of which they are members, but providing it to the latter, La Plata has arbitrarily and capriciously denied Plaintiffs equal protection of the laws. *See* Paper 4, ¶¶ 16, 21.  Even construing Plaintiffs' allegations in the light most favorable to them, however, their equal protection argument is untenable.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1).  However, "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). When "the governmental action [does] not burden a fundamental

right or employ a suspect classification, the pertinent question for determining whether the governmental action violated the Equal Protection Clause is whether the [government] officials reasonably could have believed that the action was rationally related to a legitimate governmental interest." *Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 290 (4th Cir. 1998). As the Supreme Court stated in *Beach Communications, Inc*:

> [T]hose attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it. Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.

508 U.S. at 315 (internal quotations and citations omitted); *see also MBC Realty, LLC v. Mayor and City Council of Baltimore*, 351 F.Supp.2d 420, 424-26 (D.Md. 2005). Moreover, the mere fact that one is treated differently from someone who is similarly situated is not sufficient to violate the Equal Protection Clause. As the Fourth Circuit explained:

> If disparate treatment alone were sufficient to warrant a constitutional remedy, then every blunder by a local authority, in which the authority erroneously or mistakenly treats an individual differently than it treats another who is similarly situated,

would rise to the level of a federal
constitutional claim.

*Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 825 (4th
Cir. 1995). Applying these standards, it is clear that La
Plata's actions do not run afoul of the Fourteenth Amendment's
Equal Protection Clause.

First, Plaintiffs' argument that its equal protection claim
should be analyzed under something more stringent than
traditional "rational basis" review is unpersuasive. Although
not alleged in the amended complaint, Plaintiffs assert in their
opposition papers that the impact of La Plata's policy falls
more heavily on employees who have retired from other jobs
and/or are married. *See* Paper 10 at 5. They contend that
"Plaintiffs' status as retired or married can reasonably be
inferred from the fact that they do, in fact, have [alternate]
health insurance coverage." *Id.* They argue that the
discriminatory "impact of the Town's policy" requires "some
slightly elevated test." *Id.* at 6. Even if Plaintiffs'
assertions regarding the impact of La Plata's policy were true,
the Supreme Court has made clear that "official action will not
be held unconstitutional solely because it results in a . . .
disproportionate impact." *Village of Arlington Heights v.
Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977)

(citing *Washington v. Davis*, 426 U.S. 229 (1976)).   Rather,
proof  of an invidious discriminatory intent or purpose is
required to show a violation of the Equal Protection Clause.
*Id*.

Here, Plaintiffs have not alleged that La Plata's decision
regarding its health benefits policy was motivated by an intent
to discriminate against either retirees from other jobs or
married people.  The fact that "Plaintiffs' status as retired or
married can reasonably be inferred" has no bearing on what level
of scrutiny should apply.[2]  As mentioned above, La Plata's policy
merely differentiates between those employees who possess
alternate health care coverage and those who do not.   It does

_____

[2] Moreover, to the extent that Plaintiffs' argument is that
La Plata's policy discriminates against people on the basis of
age and marital status, it is clear that neither has been deemed
a suspect class requiring a higher level of equal protection
scrutiny.  *See Swanner v. Anchorage Equal Rights Comm'n,* 513
U.S. 979, 981 (1994) (Thomas, J., dissenting from the Court's
denial  of  certiorari)  (recognizing  that  marital  status
classifications have never been accorded any heightened scrutiny
under the Equal Protection Clause); *accord Smith v. Shalala*, 5
F.3d 235, 239 (7th Cir. 1993) ("Because [a] classification based
on marital status does not involve a suspect class . . ., we
must examine it under the rational basis test."), *cert. denied*,
510 U.S. 1198 (1994); *see also Kimmel v. Florida Bd. of Regents*,
528 U.S. 62, 83 (2000) ("States may discriminate on the basis of
age without offending the Fourteenth Amendment if the age
classification in question is rationally related to a legitimate
state interest."); *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991)
("This Court has said repeatedly that age is not a suspect
classification under the Equal Protection Clause.").

not employ a suspect classification nor does it burden any fundamental right. Accordingly, the court need only determine if the policy bears a rational relationship to a legitimate governmental interest. *See Front Royal*, 135 F.3d at 290.

La Plata argues that its policy of refusing to pay the health care costs of its employees who are covered under other sources of health insurance while paying the costs of those who have no other health insurance coverage is rationally related to the legitimate governmental purpose of resource allocation. Certainly it is reasonable for a town with limited resources and budgetary constraints to conclude that differentiating between employees who have alternate health insurance coverage and employees who do not is one reasonable way to allocate the funds it spends on employee health insurance. Moreover, Maryland law governing carriers that offer coverage to small employers such as La Plata makes clear that it is "at the election of the small employer" whether or not to offer coverage to "its employees who are covered under another public or private plan of health insurance or another health benefit arrangement." Md. Code Ann., Ins. § 15-1210(a)(3) (2002 & Supp. 2004). Thus, La Plata is merely differentiating along a line explicitly provided for in the Maryland Code. Furthermore, La Plata asserts it reasonably "could have chosen not to offer paid health insurance

9

to employees with 'other coverage'" so as not to "pay substantial amounts of money for secondary health insurance . . . that would have provided little or no tangible benefit to the employee." *See* Paper 8 at 7.

Plaintiffs offer little to rebut the assertions made by La Plata other than arguing that La Plata's articulated reasons raise factual questions inappropriately resolved on a motion to dismiss. However, Plaintiffs' argument overlooks the fundamental principle that when analyzing challenged governmental policy choices under rational basis review, "legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications, Inc.*, 508 U.S. at 315. The pertinent question, thus, is "whether [La Plata] officials **reasonably could have believed** that the action was rationally related to a legitimate governmental interest." *Front Royal*, 135 F.3d at 290 (emphasis added). Thus, La Plata's policy "must be upheld against equal protection challenge if there is **any reasonably conceivable state of facts** that could provide a rational basis for the classification." *Beach Communications, Inc.*, 508 U.S. at 313.

As discussed above, La Plata asserts that its decision was based on economic and budgetary concerns. These assertions do

10

not raise "factual disputes" but rather provide "plausible policy reason[s] for the classification." *See Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992).  Plaintiffs, conceding that La Plata's "desire to save money may be legitimate," nevertheless argue that "its choice of providing health insurance to some full time workers, while denying it to others, is arbitrary, capricious, and not rationally related to the interest of saving money."  Paper 10 at 8.  Plaintiffs argue that, if saving money is the goal, La Plata would be better served by denying coverage to all its employees.  *Id*.  Although Plaintiffs may be correct that denying coverage to all town employees may save more money than denying it to some, "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Beach Communications, Inc.*, 508 U.S. at 313.  "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'"  *Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911)).  Here, La Plata's decision as to which employees it would cover and which it would not was not arbitrarily drawn as Plaintiffs suggest, but rather is in line with the option provided for in the Maryland Code.  *See* Md. Code Ann., Ins. §

11

15-1210(a)(3).    Moreover,  La  Plata  could  have  reasonably
believed  that  its  decision  was  rationally  related  to  a
legitimate governmental interest.   Accordingly, construing all
allegations  in  the  light  most  favorable  to  Plaintiffs,  it  is
beyond doubt that  they can prove no set of facts in support of
their  equal  protection  claim  entitling  them  to  relief.
Therefore,  La  Plata's  motion  to  dismiss  the  equal  protection
claim is granted.

### B.   Plaintiffs' Due Process Claim

Plaintiffs'  allege  in  their  amended  complaint  that
"Defendants' actions have deprived Plaintiffs of property rights
without due process of law."   Paper 4, ¶ 20.   As with the equal
protection claim,  however,  Plaintiffs have failed to allege the
existence of any facts that would support  a  due  process  claim.
Although Plaintiffs do not make clear whether they are asserting
a  procedural  or  substantive  due  process  claim,  in  order  to
establish  a  claim  for  a  violation  of  either,  Plaintiffs  must
first  demonstrate  that  they  possessed  a  protected  property
interest.   *See Sylvia Dev. Corp.,* 48 F.3d at 827 (holding that
in order to make out a claim for a violation of substantive due
process, a plaintiff must show that he possesses a cognizable
property interest); *Jenkins v. Weatherholtz*, 909 F.2d 105, 107
(4th Cir. 1990) (holding that a plaintiff can only state a claim

for a violation of procedural due process where plaintiff has a constitutionally protected property interest).

It is well established that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  Moreover, "[t]he Constitution does not create property interests; rather, such interests 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"  *Start, Inc. v. Baltimore County, Md.*, 295 F.Supp.2d 569, 584 (D.Md. 2003) (quoting *Roth*, 408 U.S. at 577).  Thus, a person's interest in a benefit is a "property" interest for due process purposes "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit."  *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

Here, Plaintiffs do not point to any relevant statutory or case law to support their allegation that they had a constitutionally protected property interest in continued health care coverage from La Plata.  In fact, as discussed above,

Maryland statutory law implicitly gives La Plata the option whether or not to offer coverage to "its employees who are covered under another public or private plan of health insurance or another health benefit arrangement." Md. Code Ann., Ins. § 15-1210(a)(3).  Thus, Plaintiffs could not plausibly ground their asserted property interest in a statutory right.

Plaintiffs allege, however, that in 1996, La Plata "encouraged Plaintiffs to drop their participation in the Town-sponsored health insurance program in exchange for Defendant Town's contribution on [sic] $4,000 to each employee's 401(k) savings plan." Paper 4, ¶ 8.  They allege that based upon these representations, "Plaintiffs withdrew from their participation in the Town-provided health insurance program." *Id.*, ¶ 9. According to Plaintiffs, for six years, La Plata did precisely what it promised, i.e., regularly make contributions to Plaintiffs' 401(k) plans. *Id.*, ¶ 10.  However, in 2002, La Plata ceased making these contributions and "unilaterally chang[ed] their rules for Plaintiffs' rights to participate in the Town-sponsored health and hospitalization plan." *Id.*, ¶ 18. Plaintiffs contend that the actions of La Plata deprived them of a constitutionally protected property interest based upon the "legitimate expectation that the Town would continue to honor [the] agreement" it made in 1996.  Paper 10 at 10.  Without

14

deciding whether the arrangement between Plaintiffs and La Plata beginning in 1996 constituted a binding "agreement" between the parties, Plaintiffs' amended complaint makes clear that La Plata in fact did honor the "agreement."  Because they dropped their participation in La Plata's plan, La Plata in turn made regular contributions to their 401(k) plans.  *See* Paper 4, ¶ 10. Nothing in Plaintiffs' amended complaint, or in their opposition papers, suggests that they could expect this arrangement to continue in perpetuity.  Moreover, Plaintiffs have alleged no facts to indicate that it would have been reasonable for them to expect such an arrangement.  In short, Plaintiffs make no allegations demonstrating "mutually explicit understandings that support [their] claim of entitlement to [continued health] benefit[s]," *see Perry,* 408 U.S. at 601, sufficient to state a claim for a deprivation of a constitutionally protected property interest.

Moreover, Plaintiffs have not cited a single case with comparable facts to support their contention that La Plata's actions deprived them of a constitutionally protected property interest.  In contrast, several federal courts from other circuits have analyzed analogous issues and found that employee-related benefits, even if mandated by a contractual agreement, do not rise to the level of a constitutionally protected

15

property interest.   For example, in *Lawrence v. Town of Irondequoit*, 246 F.Supp.2d 150 (W.D.N.Y. 2002), the plaintiffs, retired town employees, brought suit asserting that the defendant town wrongfully reduced their retirement health care benefits in violation of their federal due process rights.   The plaintiffs based their claim on an employment manual adopted in 1978 ("the 1978 Manual") that they alleged "created a contract between plaintiffs and the Town that assured plaintiffs lifetime Blue Million coverage if, at the time of retirement, they had been employed on a regular basis by the Town for a minimum of ten years and were fifty-five years old or more upon retirement."   *Id*. at 153.   There was no dispute that the plaintiffs met those pre-conditions.   In 2001, after the town changed the type of health care coverage it provided to the plaintiffs, they brought suit alleging that the 1978 Manual precluded the Town from changing those benefits once they retired, and "that they had a constitutionally protected property right in the lifetime Blue Million coverage promised by

the Town which was abrogated without due process of law."[3]  *Id*. at 153.  The court disagreed.

For purposes of the plaintiffs' due process claim, the court assumed without deciding "that the 1978 Manual created an obligation by the Town to provide plaintiffs fully paid Blue Million coverage for life."  *Id*. at 156.  It also assumed that benefits under the new alternative health care plans were inferior to the benefits available under the Blue Million plans. Accordingly, the court recognized:

> [T]he issue to be decided is whether a reduction in health care benefits to a retired employee, whose right to receive such benefits arises from a contract and has vested, constitutes a violation of a constitutionally protected property interest that cannot be deprived without due process of law.

*Id*.  Couched as such, the court held that "the Constitution provides no remedy under these circumstances."  *Id*.

The court concluded that the plaintiffs' interest in receiving a specified level of retirement health care benefits

---

[3] In 2001, the town passed a resolution changing the fully paid health coverage it provided to its retirees.  *Id*. at 155. Rather than providing Blue Million coverage for all its retirees, the town offered fully paid coverage in less comprehensive, and less costly, health care plans.  Retirees who chose to continue their Blue Million Coverage could do so but only if they paid the difference in premium costs between Blue Million and the alternative plans.  *Id*.

paid for by the Town was "'qualitatively different from the interests the Supreme Court has thus far viewed as property entitled to procedural due process protection.'"   *Id.* at 157 (quoting *S&D Maint. Co. v. Goldin*, 844 F.2d 962, 966 (2nd Cir. 1988)).   Quoting the Second Circuit, the court stated:

> [T]he Due Process Clause is invoked to protect something more than an ordinary contractual right.   Rather, procedural protection is sought in connection with a state's revocation of a *status*, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits.[4]

*Id.* (quoting *S&D Maint. Co.*, 844 F.2d at 966) (emphasis in original).   Because the "plaintiffs' claim of entitlement to the benefit [they seek] arises out of a contract with the Town, not from a state statute or constitutional provision," it concluded that the plaintiffs' action was "an ordinary contract dispute

---

[4] Indeed, in the matter *sub judice*, the only cases Plaintiffs cite in support of their due process argument are those in which the plaintiffs alleged a property interest in their *continued employment* as public employees, not an interest in any employment-related benefits. *See, e.g., Roth*, 408 U.S. 564 (state university professor); *Perry*, 408 U.S. 593 (state junior college professor); *Huntley v. N.C. State Bd. of Ed.*, 493 F.2d 1016 (4th Cir. 1974) (state elementary school teacher); *McNeill v. Butz*, 480 F.2d 314 (4th Cir. 1972) (federal civil-service employees); *Hoyt v. Police Comm'r of Baltimore City*, 367 A.2d 924 (Md. 1977) (city police officers).

that should not be elevated to a constitutional claim." *Id*. at 158.

Here, like the plaintiffs in *Lawrence*, Plaintiffs' claim of entitlement does not arise from a state statute or constitutional provision. In fact, as discussed above, rather than supporting Plaintiffs' claim to a constitutionally protected property "right[] to participate in the Town-sponsored health and hospitalization plan," *see* Paper 4, ¶ 18, the statute covering La Plata as a municipal small employer provides that it is "at the election of the small employer" whether or not to offer coverage to "its employees who are covered under another public or private plan of health insurance or another health benefit arrangement." Md. Code Ann., Ins. § 15-1210. Rather, Plaintiffs' claim arises from what it alleges was a "practice of allowing Plaintiffs to participate in the Town-sponsored health and hospitalization plan or paying Plaintiffs [by making contributions to their 401(k) plans] a differential reflecting the cost to the Town of providing such coverage to its covered employees." Paper 4, ¶ 13. However, "a mere expectation of a benefit--even if that expectation is supported by consistent government practice--is not sufficient to create an interest protected by procedural due process." *Board of Pardons v. Allen*, 482 U.S. 369, 382 (1987) (O'Connor, J., dissenting)

19

(explaining the principle of *Roth*, 408 U.S. 564).  Here, even if the arrangement entered into between Plaintiffs and La Plata created a contractual obligation on La Plata's part, which the court does not decide, such an arrangement did not create a constitutionally protected property interest.  *Cf. Ramsey v. Bd. of Educ. of Whitley County, Ky.*, 844 F.2d 1268, 1274-75 (6th Cir. 1988) (holding "that an interference with a property interest in a pure benefit of employment, as opposed to an interest in the tenured nature of the employment itself, is an interest that can be and should be redressed by a state breach of contract action and not by a federal [constitutional] action under section 1983"); *Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2nd Cir. 1987) (stating that a claimed entitlement to an increase in pension benefits under a collective bargaining agreement amounts to a contract dispute that is not actionable under federal law); *Tucker v. Darien Bd. of Educ.*, 222 F.Supp.2d 202, 206-07 (D.Conn. 2002) (stating that "in order to prevail on a due process claim alleging a deprivation of a property right, the plaintiff must demonstrate something more than an ordinary contract right and a reliance thereon" and that the plaintiff's "claimed medical payment [was] an employment benefit not protected as a property interest by the Due Process Clause"); *Danese v. Knox* 827 F.Supp. 185, 193 (S.D.N.Y. 1993) ("[W]e hold

20

that a public employee's right to receive line of duty sick leave under a collective bargaining agreement is not a 'property right' under the fourteenth amendment."). Absent a constitutionally protected property interest, it is beyond doubt that Plaintiffs cannot state a claim for a due process violation. Accordingly, La Plata's motion to dismiss this claim will be granted.

### C.   *Promissory Estoppel*

La Plata has also moved to dismiss Plaintiffs' remaining promissory estoppel claim.[5] It argues that if the claim is in the nature of a tort, then it is barred by governmental immunity; if in the nature of a contract, it contends the claim is barred by Maryland's one-year statute of limitations for contract actions against a municipality under Md. Ann. Code art. 23A, §1A(c).[6] Alternatively, it argues that assuming Plaintiffs'

---

[5] Because this court has original jurisdiction to entertain Plaintiffs' federal constitutional claims, it is also empowered to entertain Plaintiffs' state law claim under 28 U.S.C. § 1367(a). *See* 28 U.S.C. § 1367(a).

[6] Section 1A of Article 23A provides, in part, that "a municipal corporation, and every officer, department, agency, board, commission, or other unit of municipal government may not raise the defense of sovereign immunity in the courts of this State in an action in contract based upon a written contract executed on behalf of the municipal corporation," but that such a "claim is barred unless the claimant files suit within one year from the date on which the claim arose or within one year after completion of the contract giving rise to the claim,
(continued...)

claim is not barred by either governmental immunity or an applicable statute of limitations, the amended complaint nevertheless fails to state a claim for promissory estoppel relief.   Because the court agrees that Plaintiffs' complaint does not state a claim for relief under the doctrine of promissory estoppel, it is unnecessary to pass upon La Plata's immunity and statute of limitations arguments.[7]   Accordingly, La

---

[6](...continued)
whichever is later."   *Id.*

[7]   Given that Maryland courts treat the doctrine of promissory estoppel as a "quasi-contractual" claim, it is doubtful that any doctrine of governmental immunity from **tort liability** would serve to bar Plaintiffs' promissory estoppel claim.   *See Ver Brycke v. Ver Brycke*, 843 A.2d 758, 772 n.9 (Md. 2004) (noting that promissory estoppel is a "quasi-contract" claim that is unavailable when an express contract exists between the parties concerning the same subject matter); *Pavel Enters., Inc. v. A.S. Johnson, Co., Inc.*, 674 A.2d 521, 531–32 (Md. 1996) (describing promissory estoppel as a "different way[] to prove that a contractual relationship exists" between parties); *see also Odyssey Travel Center, Inc. v. RO Cruises, Inc.*, 262 F.Supp.2d 618, 626 (D.Md. 2003) ("Promissory estoppel is a quasi-contractual claim, which is an equitable remedy that permits recovery 'where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise.'") (quoting *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F.Supp.2d 785, 792 (D.Md 2002) (internal citation omitted)).
In addition, La Plata's argument with respect to the applicability of section 1A of Article 23A is equally suspect given that section 1A expressly applies to "action[s] in contract based upon a written contract executed on behalf of the municipal corporation."   Md. Ann. Code art. 23A, § 1A.   First, Plaintiffs' suit is technically not an "action in contract" but, as mentioned above, sounds in "quasi-contract."   Second, and
(continued...)

Plata's motion to dismiss the promissory estoppel claim will be granted.

To state a claim for promissory estoppel in Maryland, a plaintiff must allege:

  1. a clear and definite promise;
  2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;
  3. which does induce actual and reasonable action or forbearance by the promisee; and
  4. causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel Enters., Inc.*, 674 A.2d at 532.  Even construing the factual allegations in the complaint in the light most favorable to Plaintiffs, they have failed to state a claim for relief under the doctrine of promissory estoppel.

Plaintiffs allege that in 1996, "Defendants encouraged [them] to drop their participation in the Town-sponsored health insurance program in exchange for Defendant Town's contribution . . . to each employee's 401(k) savings plan."  Paper 4, ¶ 8.  They further allege that "[b]ased upon those representations, Plaintiffs withdrew from their participation in the Town-

_____

[7](...continued)
perhaps most notably, it is not based on a "written contract."
However, because Plaintiffs' amended complaint fails to state a
claim for relief, it is not necessary to decide definitively
these issues.

provided health insurance program," and that "[b]etween 1996 and 2002, the Town regularly made contributions on Plaintiffs' behalves to their 401(k) programs." *Id.*, ¶¶ 9, 10. Plaintiffs allege that "[b]y promising to contribute sums towards Plaintiffs' 401(k), Defendants made clear and definite promises," that Defendants "reasonably expected . . . their promises would induce Plaintiffs to withdraw from their participation in" La Plata's health plan, and that the promises "induced actual and reasonable action by Plaintiffs who ceased their participation in" La Plata's plan. *Id.*, ¶¶ 24-26. Finally, Plaintiffs allege that they "have incurred a detriment that can only be cured by enforcing the promises made by Defendants." *Id.*, ¶ 27. It is this final element on which Plaintiffs' promissory estoppel claim must fail.

First, the Maryland Court of Appeals has instructed that a "court, and not a jury, must determine that binding the [promisor] is necessary to prevent injustice." *Pavel Enters., Inc.*, 674 A.2d at 533. Here, even assuming that La Plata's "representations" that it would contribute to Plaintiffs' 401(k) plans in exchange for their withdrawal from La Plata's health insurance program constitute clear and definite promises, the allegations make clear that La Plata, in fact, did honor those promises. *See* Paper 4, ¶ 10. During the time in which Plaintiffs were entitled to participate in the health insurance

24

program, LaPlata did honor its commitment to contribute to their 401(k) plans.  To that extent, the "clear and definite promises" La Plata made were fulfilled.  The payments only ceased once Plaintiffs were no longer eligible to participate in the health insurance program.

Moreover, Plaintiffs have alleged nothing in the amended complaint, nor asserted anything in their opposition papers, that would allow a court to conclude that the contributions were to be made in perpetuity, and Plaintiffs have alleged no facts to indicate that it would have been reasonable for them to expect such an arrangement.  Accordingly, Plaintiffs' expectations that La Plata would continue to make perennial contributions in perpetuity so long as they continued to opt out of La Plata's health insurance coverage are unreasonable.  *Cf. G&M Oil Co. v. Glenfeld Fin. Corp.*, 782 F.Supp. 1085, 1090–91 (D.Md. 1991) ("[I]n order to recover under a theory of promissory estoppel, [the promisee] 'must establish that its reliance on the defendant's promise was reasonable.'") (quoting *RCM Supply Co. v. Hunter Douglas, Inc.*, 686 F.2d 1074, 1078 (4th Cir. 1982)).

Although the court is to construe all factual allegations in the complaint in the light most favorable to Plaintiff, the court need not accept unsupported legal allegations, *Revene*, 882 F.2d at 873, legal conclusions couched as factual allegations, *Papasan,* 478 U.S. at 286, or conclusory factual allegations

devoid of any reference to actual events, *United Black Firefighters,* 604 F.2d at 847. Plaintiffs' allegation that they have "incurred a detriment that can only be cured by enforcing the promises made by Defendants" is a conclusory legal allegation that simply finds no support in Plaintiffs' amended complaint.   As Plaintiffs' allege, La Plata did honor its "promises" until it decided, for reasons discussed above and in conformity with Maryland statutory law, that it would no longer offer free health insurance to its employees who were also covered by alternative sources of health insurance.  Nothing in Plaintiffs' complaint supports an inference that it would be reasonable for Plaintiffs' to expect that they could continue to choose between Town-sponsored health insurance or contributions to their 401(k) plans indefinitely.   Moreover, given that La Plata initially honored its agreement, there are no allegations supporting the fourth element of a promissory estoppel claim, i.e., that Plaintiffs suffered a detriment which can only be avoided by the enforcement of the promise. *See Allen M. Campbell Co., Gen. Contractors, Inc. v. Virginia Metal Indus., Inc.*, 708 F.2d 930, 931 (4th Cir. 1983) (explaining that the concept of promissory estoppel has developed to allow "recovery even in the absence of consideration where reliance and change of position to the detriment of the promisee make it unconscionable not to enforce the promise").  Accordingly, it is

26

beyond doubt that Plaintiffs can prove no set of facts entitling them to relief under a theory of promissory estoppel, and, thus, Defendants' motion to dismiss as to this claim will be granted.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss the amended complaint will be granted.[8]   A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

May 4, 2005

_____

[8] Because Defendants' motion will be granted, the subsidiary motion to dismiss Mayor Eckman as a defendant is moot.   *See* Paper 8 at 10.